Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN JENSEN, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | CLASS ACTION COMPLAINT |
| *v.* | DEMAND FOR JURY TRIAL |
| NEXTHOME, INC., a Delaware registered corporation, | |
| *Defendant.* | |

### CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages train real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA"). Plaintiff Marilyn Jensen. ("Plaintiff" or "Jensen") brings this Class Action Complaint and Demand for Jury Trial against NextHome, Inc. ("Defendant" or "NextHome") to stop the Defendant from violating the TCPA by training its franchisees' real estate agents to make pre-recorded calls to consumers' cellular telephone numbers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Jensen, for

this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.    Plaintiff Jensen is a resident of Point Pleasant, New Jersey.

2.    Defendant NextHome is a Delaware registered corporation headquartered in Pleasanton, California. Defendant NextHome conducts business throughout this District, New Jersey, and the United States.

## JURISDICTION AND VENUE

3.    This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.    This Court has personal jurisdiction over the Defendant since the Defendant has its headquarters in this District and the Defendant directed its wrongful conduct from this District.

## INTRODUCTION

5.    As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

2

7.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.    According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in July 2024 alone, at a rate of 138.6 million calls per day. www.robocallindex.com (last visited August 15, 2024).

10.    The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

**COMMON ALLEGATIONS**

13.     NextHome is a real estate franchisor with over 600 real estate franchises located throughout the US.[3]

14.     NextHome's franchisees provide real estate agency services to consumers.

15.     These services include the buying and selling of properties for a real estate agency commission.

16.     NextHome provides its franchisees and their agents common branding, technology, marketing and training for them to be successful NextHome real estate agents.[4]

17.     NextHome also provides an approved supplier catalog to its franchisees.[5]

18.     NextHome franchises like Force Realty Partners, who called the Plaintiff, either pay flexible fees to NextHome or they agree to 1-year or 5-year agreements with NextHome.[6]

19.     NextHome provides regular, ongoing training to all of its affiliated real estate franchisees.

20.     This training includes Day One Coaching and training that is provided through the NextHome's website and other online sources:

---

[3] https://www.linkedin.com/company/nexthome/about/
[4] https://www.nexthome.com/
[5] https://content.nexthome.com/marketing/approved_supplier_catalog.pdf
[6] https://www.agentadvice.com/nexthome/



**NEXTHOME TRAINS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE REAL ESTATE BUSINESS**

**DAY ONE TRAINING:**

21.     Day One is a comprehensive 12-week course developed by the NextHome franchisor that is provided to all NextHome affiliated real estate agents:

---

[7] https://www.facebook.com/profile/100063744692440/search/?q=%22Day%20One%22



22.     Day One is promoted and taught by NextHome franchises, including Force Premier Realty, the franchise that placed calls to the Plaintiff:

### DAY ONE

A comprehensive 12-week course designed to launch NextHome agents into production. Each module includes instruction, group activities, handouts, and exercises. We cover working with buyers/sellers, lead gen, accountability, time management, and everything in between. [9]

23.     As per the above, Day One covers lead generation and realtor accountability.

24.     Day One provides a very strong focus on placing cold calls to generate real estate business.

25.     Day One is broken down into 6 parts, as per this training breakdown that was provided by a NextHome franchisee who expounds on the Day One training program:

---

[8] Id.
[9] https://sellmorewithnexthome.com/



26.    Part four of Day One "Systems and Procedures" delves into the topic of lead generation where it specifically lists cold calling as a method of database growth, as can be seen in this screenshot from the NextHome Day One handbook:

[10] https://www.nexthomereoffice.com/c/nextlevel-day-one

7



27.    In the above video, which provides insight into the Day One training, the presenter addresses cold calling, stating:

"Cold calling. You're not going to sit down and cold call for an hour and just be done and for a week, and hope that you land somebody. You need to have a system. Say, okay, I'm going to spend at least an hour a day on every single thing. Okay, let's just say I'm going to pick cold calling. If you spend an hour a day cold calling, you will make those 20 people on your buyers list, if may take you 2 months to get there, I'm not saying this stuff will be done in a week, I'm talking it may take you 2 months... if you cold call for 2 months your buyer's list will be filled up."[12]

28.    The fifth part of the Day One training goes into more detail about lead generation, listing cold calling as a source used to generate leads, as seen in page 22 of the NextHome Day One handbook:

---

[11] https://www.youtube.com/watch?v=dUrcTC3hwM8
[12] Id. - 8 minutes, 55 minutes



29.    As per the above screenshot, NextHome provides training that includes a "cold call skit class."

30.    On page 24 of the Day One handbook, additional lead sources are provided, including for sale by owners ("FSBO") and consumers with expired property listings ("Expired"), like Plaintiff Jensen:



---

[13] https://www.youtube.com/watch?v=OiccPPN5kdM
[14] Id. – 22 minute, 20 seconds

31.    Consumers with FSBO listings and Expireds have not provided any consent to receive calls or text messages from NextHome.

32.    Despite this fact, NextHome lists FSBOs and Expireds as lead sources for real estate agents to target in generating business.

33.    In the Day One part five training video that is referenced above, the trainer discusses cold calling again, stating:

> "So, cold calling and texting. That's another great way to just meet new people. Guys come to Dustin deal dash if you want to hear how this is done. How you get phone numbers. How do you know who to call. We teach that. Next time, we'll show you who to call, what to say and how to do it."[15]

34.    The above quote specifically references training that involves learning where to obtain these phone numbers and what to say when you call them.

35.    In the final part of Defendant's Day One training, real estate agents are trained to recognize where their money comes from, which includes cold calling:



[15] Id. – 19 minutes, 16 seconds
[16] https://www.youtube.com/watch?v=SQXVe9cXhSQ

36.    Defendant's training goes on to encourage real estate agents in being persistent with their cold calling because it does produce results:



**Income Producing Activities**
**Cold Call / Cold Text**

**Use the pond**

We have tons of leads to call. If you are interested, log into KvCore and dive into the pond. Also, come to Dustin's Dealdash!

**Be persistent**

This takes time and effort. That is why it is called work, right? Cold calling isn't fun, but does produce results.

**Keep notes**

Write down what works. Keep track of who says what. A CRM rocks when you get into reaching multiple people.

KEEP NOTES! Be organized.

[NextHome⟩                                                    17

37.    Defendant's training then moves to cold calling FSBOs and Expireds, instructing its real estate agents to "Call and introduce yourself" to consumers:



**Income Producing Activities**
**FSBO/Expired**

**FSBO**

- Drop off a CMA and listing package.
- Text a personal message.
- Call and introduce yourself

**Expired**

- Drop off a personalized CMA and listing package.
- Text a personal message.
- Call and introduce yourself.

Consistency is key here.

[NextHome⟩                                                    18

---

[17] Id. – 28 minutes, 7 seconds
[18] Id. – 55 minutes, 8 seconds

11

## ADDITIONAL TRAINING

38.    NextHome provides additional training through its Facebook page, with a focus on cold calling.

39.    For example, an article "Mastering the Cold Call" was posted on the NextHome Facebook page, linking to an article that is on the NextHome website:



[19]

40.    Defendant's article provides advice to real estate agents in learning how to approach and successfully place a cold call to a consumer.[20]

41.    In another example, an article was posted on the NextHome Facebook page about Expireds providing 6 steps for a real estate agent to obtain expired property listings:

---

[19] https://www.facebook.com/profile/100063744692440/search/?q=prospecting
[20] https://www.nexthome.com/2022/11/mastering-the-cold-call/



**NextHome** · Follow
February 28, 2019 · 🌐

If working expired listings is your niche, then this article is a must-read for you. Featuring words of wisdom by NextHome's Chief Strategy Officer, Keith Robinson, here are the 6 steps to getting expired listings! #NextHome



FITSMALLBUSINESS.COM
**How to Get Expired Listings in 6 Steps**
Expired listings are properties that are unsold by the listing's expiration date and haven't be... [21]

42.    The above Facebook post links to an article that encourages real estate agents to place cold calls to consumers with expired property listings:

---

[21] https://www.facebook.com/profile/100063744692440/search/?q=expired

## 2. Call Expired Listing Owners Directly

The most tried-and-true method of reaching expired real estate listings is by contacting them directly. Although it's a straightforward strategy, it is not always easy since owners of expired house listings typically feel frustrated and skeptical of real estate agents. To overcome this, develop a script specifically for calls to expired listing leads.

Your expired listing script should build rapport and further the conversation concisely, presenting the next step and offering a solution for the homeowner. Make sure you also do your due diligence to be prepared to ask or answer specific questions about the property. When creating your scripts, keep these noteworthy tips in mind:

- Briefly introduce yourself
- Be concise—get straight to the point
- Be clear about your intent and offer
- Focus on the seller
- Demonstrate why you're the right person to sell their home
- Address common objections and pain points
- Ask to schedule a meeting [22]

43.     The article goes on to recommend RedX, a service that informs real estate agents when property listings become expired. This service provides the names and phone numbers of consumers who have not consented to be contacted:[23]

Find expired listing leads before other agents by checking out REDX, a real estate prospecting platform that automates your search. It eliminates the need to spend hours finding your next lead and allows you to start nurturing them before anyone else. Learn how to get expired listings through REDX and see how it will help you build a profitable business on expired listing leads.

**Visit REDX** [24]

44.     In the NextHome approved supplier catalog, RedX is listed as an approved supplier:

---

[22] https://fitsmallbusiness.com/how-to-get-expired-listings/
[23] https://www.redx.com/
[24] https://fitsmallbusiness.com/how-to-get-expired-listings/

**REDX**

CONTACT: **Tyler Fenn,** VP of Sales
PHONE:   801.731.7339 ext 252
EMAIL:   tyler.fenn@redx.com
CONTACT: **Jonathan Metoyer,** Director of Sales
PHONE:   818.438.7254
EMAIL:   jonathan.metoyer@redx.com
WEBSITE: redx.com

REDX is a premier real estate software company dedicated to helping agents increase their personal production and grow their businesses. With a suite of innovative tools and unparalleled support, REDX empowers real estate professionals to prospect efficiently, attract leads, and turn them into clients across various platforms. Dedicated to helping agents excel in the competitive real estate market, REDX stands as the ultimate partner for achieving success and realizing potential. [25]

45.     Defendant NextHome directs its real estate agents to use RedX and other similar systems to obtain phone numbers of expired listings so that they can call them to solicit their business services.

**THE DEFENDANT PROVIDES COMPLIMENTARY TOOLS SO ITS REAL ESTATE AGENTS CAN PLACE UNSOLICITED PRE-RECORDED CALLS TO CONSUMERS**

46.     NextHome partnered with Inside Real Estate to provide kvCORE to all of its real estate agents:

> **Pleasanton, CA — March 16, 2022 —** NextHome, rated the #1 franchise brand in America for owner satisfaction in 2022 across all industries with a proven consumer-centric business model, has partnered with Inside Real Estate to provide kvCORE, the industry's #1 rated technology platform to its 575+ franchised locations and 5,200+ members nationwide. NextHome will also provide CORE Team accounts, a uniquely designed team solution built within kvCORE, to their entire network, ensuring all NextHome teams can operate with full autonomy and leverage the kvCORE Platform to grow their own independent "business within a business". [26]

---

[25] https://content.nexthome.com/marketing/approved_supplier_catalog.pdf
[26] https://www.nexthome.com/2022/03/nexthome-inc-one-of-the-fastest-growing-franchise-brands-in-the-country-partners-with-inside-real-estate-to-deliver-the-industry-leading-kvcore-platform-to-their-575-franchised-locations-and-5200-memb/

47.     Aside from providing all NextHome real estate agents with an autodialer, kvCORE also provides a function that can be used to place pre-recorded calls to consumer cell phone, as per Plaintiff's experience.

48.     kvCORE can be used to send pre-recorded voicemails to consumers if the consumer does not answer a call from a real estate agent:



kvCORE Voicemail Drop Explained | Direct Voicemails To Your Leads    [27]

49.     Unfortunately, the Defendant is causing pre-recorded calls to be placed to consumers like the Plaintiff who never provided consent to receive such calls, in violation of the TCPA.

50.     In conclusion, Defendant trains real estate agents to place cold calls to consumers.

51.     Defendant provides tools for real estate agents to acquire the name and phone numbers or consumers with expired listings at no cost to their real estate agents.

---

[27] https://www.youtube.com/watch?v=YBiZUglitPI

52.    Defendant provides kvCORE to its real estate agents who use this platform to place unsolicited pre-recorded calls to consumers, like Plaintiff Jensen.

53.    Defendant is responsible for the unlawful telemarketing activities that resulted in the filing of this Complaint.

54.    Defendant profits from the unlawful telemarketing activities that resulted in the filing of this Complaint.

55.    In response to these calls, Plaintiff Jensen brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF JENSEN'S ALLEGATIONS

56.    Plaintiff Jensen is the subscriber of the cell phone number ending in 8086.

57.    Plaintiff Jensen's son had a property listed for sale but the listing expired. Plaintiff Jensen was listed as the contact for the home.

58.    Plaintiff Jensen's son decided that he would keep the home.

59.    The property was not listed for sale by NextHome or any NextHome affiliated franchisee.

60.    On August 2, 2024 at 1:28 PM, Plaintiff Jensen received an unsolicited call to her cell phone from 732-443-3518.

61.    This call was not answered, but a pre-recorded voicemail was left:



62.    732-443-3518 is a Google Voice phone number.

63.    732-213-897 is the direct number for Allan Burns, an owner/broker at Force Realty

Partners:

---

[28] https://www.dropbox.com/s/q7d9dvl72011cxe/August%202.m4a?dl=0



NextHome
FORCE REALTY
PARTNERS

SEARCH     HOME VALUATION     FINANCE     ABOUT US ▾     INVESTORS     CONTACT

Allan Burns - Owner, Broker / Owner

Allan Burns
Force Group

**⌂ View All My Listings**

### Contact Information

| | |
|---|---|
| **Address:** | 36 Monmouth Street, Unit 2 Red Bank, NJ 07701 |
| **Work Phone:** | 855-653-6723 |
| **Direct Line:** | 732-213-8987 |
| **E-mail Me** | |



Information          About Allan

[29]

64.    Force Realty Partners is a franchisee of NextHome.

65.    Plaintiff Jensen believes that this voicemail was pre-recorded because it is generic in that it was likely sent to a list of phone numbers associated with recent expired listings, does not address the recipient by name, begins with a slight beep after a few seconds of silence, the Plaintiff received the same exact voicemail twice, because NextHome uses kvCORE to place pre-recorded voicemails and because the voicemails were placed using a Google Voice number, which is common for kvCORE.[30]

66.    On August 13, 2024 at 4:45 PM, Plaintiff Jensen received a 2nd unsolicited call to her cell phone from 732-443-3518.

67.    This call was not answered, but a pre-recorded voicemail was left:

---

[29] https://allanburns.forcenj.com/agents/1197325/Allan+Burns
[30] https://www.youtube.com/watch?v=YBiZUglitPI

68.     Plaintiff Jensen believes that this voicemail was pre-recorded because it is identical to the voicemail that Plaintiff received on August 2, 2024.

69.     Plaintiff Jensen never provided consent to NextHome or any of its affiliated franchises to receive any calls to her cell phone number.

70.     The unauthorized solicitation telephone calls that Plaintiff received from the Defendant, as alleged herein, have harmed Plaintiff Jensen in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

71.     Seeking redress for these injuries, Plaintiff Jensen, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

---

[31] https://www.dropbox.com/scl/fi/hz2zi6ow3yghq9nfcov1t/August-13-Voicemail.m4a?rlkey=ex3gqccz0opvf1uusxw0u7m9z&dl=0

## CLASS ALLEGATIONS

72.    Plaintiff Jensen brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**<u>Pre-recorded No Consent Class</u>:** All persons in the United States who from four years prior to the filing of this action through trial (1) the a NextHome affiliated real estate agent called on their cellular telephone number (2) using a pre-recorded voice message.

73.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Jensen anticipates the need to amend the Class definition following appropriate discovery.

74.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

75.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)    whether Defendant directed pre-recorded voice message calls to be placed to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b)    whether the calls constitute a violation of the TCPA;

(c)    whether Defendant is vicariously liable for its affiliated real estate agents' calls; and

(d)    whether members of the Class are entitled to treble damages based on the wilfulness of Defendant's conduct.

76.    **Adequate Representation**: Plaintiff Jensen will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Jensen has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Jensen and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Jensen nor his counsel have any interest adverse to the Class.

77.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Jensen. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it

would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Jensen and the Pre-recorded No Consent Class)

78.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

79.    Defendant caused the transmission of unwanted telephone calls to Plaintiff Jensen and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

80.    These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

81.    The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)    An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b)    An award of actual and/or statutory damages and costs;

c)    An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all pre-recorded calling activity that is done without proper consent, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Jensen requests a jury trial.

**MARILYN JENSEN**, individually and on behalf of all others similarly situated,

DATED this 18th day of October, 2024.

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*